IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YOHANNA GERGES,
individually and on behalf
of all others similarly situated,

    Plaintiff,

v.                                                                                  Civ. No. 1:21-cv-00810 MIS/GJF

WELLS FARGO BANK N.A.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss and the associated briefing. ECF Nos. 15, 19, 20. For the reasons that follow, the Motion will be granted.

## BACKGROUND[1]

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), H.R. 748, Pub. L. No. 116–136, in an effort to provide economic relief during the coronavirus pandemic. This suit arises out of Plaintiff's application for a loan from Defendant Wells Fargo Bank N.A. ("Wells Fargo") through the Paycheck Protection Program ("PPP") established by the CARES Act.

Plaintiff is a small business owner. At the time of his application, Plaintiff held a personal checking account with Wells Fargo. ECF No. 11 at ¶ 6. In order to apply for a

---

[1] These facts are drawn from the allegations of the Amended Class Action Complaint, ECF No. 11, and the exhibits attached to Defendant's Motion, ECF Nos. 16-1 through 16-11. *See Hanock v. AT&T Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (framework for deciding a motion to compel arbitration is "similar to summary judgment practice" and the court may grant the motion "if there are no genuine issues of material fact regarding the parties' agreement" (quotation omitted)).

1

PPP loan he was additionally required to open a business checking account. ECF No. 16-8 at 2. Plaintiff completed and signed a Wells Fargo Business Account Application on March 9, 2021. ECF No. 16-1. The application stated, on its signature page:

> A.   The Customer's use of any Wells Fargo Bank, N.A. ("Bank") deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.

*Id*. at 5. The Wells Fargo Business Account Agreement effective July 24, 2019, included a section called "Resolving disputes through arbitration" and provided in relevant part:

> Except as stated in "No waiver of self-help or provisional remedies" below, Wells Fargo and you agree, at Wells Fargo's or your request, to submit to binding arbitration all claims, disputes, and controversies between or among Wells Fargo and you . . . whether in tort, contract or otherwise arising out of or relating in any way to your account(s) and/or service(s), and their negotiation, execution, administration, modification, substitution, formation, inducement, enforcement, default, or termination (each, a "dispute").
>
> [ . . . ]
>
> The arbitrator(s) will determine whether or not an issue is arbitrable and will give effect to the statute of limitation in determining any claim.[2]

ECF No. 16-11 at 10–11.

On March 22, 2021, Plaintiff completed and signed a Paycheck Protection Program Borrower Application with Wells Fargo. ECF No. 16-2. On April 4, 2021, Plaintiff

---

[2] Wells Fargo's updated Deposit Account Agreement, effective May 28, 2021, contains a substantively identical arbitration agreement for holders of business checking accounts. ECF No. 16-10 at 36–37.

signed and acknowledged receipt of the Paycheck Protection Program Promissory Note and Agreement. ECF No. 16-4. The Promissory Note and Agreement had a section titled "Arbitration" which included the following provision:

> **Binding Arbitration:** The parties hereto agree, upon demand by any party, to submit any dispute to binding arbitration in accordance with the terms of this Paragraph 21 (the "Arbitration Program.") . . . A "Dispute" shall include any dispute, claim, or controversy of any kind, in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to any aspect of this agreement . . . .

ECF No. 16-4 at 6. The Promissory Note and Agreement also provided, like the Business Account Agreement, that "[t]he arbitrator will determine whether or not an issue is arbitrable." *Id*.

On April 5, 2021, in accordance with this agreement, Plaintiff received a "first draw" PPP loan disbursement in the amount of $10,727.00. ECF No. 16-3 at 3. However, Plaintiff alleges that he was later denied a "second draw" PPP loan[3] because, despite meeting statutory requirements, he presented a higher risk of default. ECF No. 11 at ¶ 9–10. This denial forms the basis of Plaintiff's claims.

Plaintiff filed suit in the Second Judicial District Court of Bernalillo County on July 20, 2021, and the action was removed to this Court on August 23, 2021. ECF Nos. 1, 1-2. On that same date Wells Fargo sent Plaintiff a formal Arbitration Demand, which was refused. ECF No. 16-9. The operative Amended Complaint was filed on September 1, 2021, and alleges claims pursuant to the CARES Act; the Small Business

---

[3] The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, enacted in December 2020, authorized "second draw" loans to small business and other entities that had already received one PPP loan. *See* 86 Fed. Reg. 3692, 3692–712 (Jan. 14, 2021).

Administration's 7(a) loan program, 15 U.S.C. § 636(a); and the New Mexico Unfair Practices Act. ECF No. 11. Defendant's Motion is now before the Court.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA")[4] provides that a written agreement to arbitrate a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a valid arbitration agreement exists, the court is required to stay proceedings and direct the parties to proceed to arbitration. *Id*. §§ 3, 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). This provision "reflects 'a liberal federal policy favoring arbitration agreements,' and creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *BOSCA, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1170 (10th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Where, however, the scope, validity, or enforceability of the arbitration agreement is in dispute, the court must first determine whether the parties agreed to arbitrate the claims alleged. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). This is determined with reference to the "federal substantive law of arbitrability," *id*., and applicable state law, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31

---

[4] Neither party disputes that the Federal Arbitration Act applies to the agreements signed by Plaintiff, and the application of the FAA appears consistent with controlling case law. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003).

(2009). The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

## DISCUSSION

Each of the agreements signed by Plaintiff, as set forth above, either included or incorporated by reference a mandatory arbitration agreement. Each arbitration agreement contained a provision delegating the determination of "whether or not an issue is arbitrable" to the arbitrator. ECF Nos. 16-4 at 6, 16-10 at 37, 16-11 at 11. Pursuant to these provisions, any dispute over whether Defendant can compel Plaintiff's claims to arbitration must be directed to the arbitrator. Therefore, the threshold question before this Court is only whether the delegation provisions should be upheld.

As a general matter, it rests with the court to determine "whether the parties agreed to arbitrate [the] dispute," *Mitsubishi Motors Corp.*, 473 U.S. at 626, and "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Tech., Inc. v. Commc's Workers*, 475 U.S. 643, 649 (1986)). However, it is well-settled that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

Unless the party opposing arbitration challenges the delegation provision *specifically*, the court must treat the provision as valid and must enforce it. *Id*. at 72.

Therefore, where an arbitration agreement contains a delegation provision, a challenge to the validity or enforceability of "the *entire agreement*" or even "the *arbitration agreement as a whole*" is not properly considered by the court. *Id.* at 73 (emphasis in original). Notwithstanding this general rule, "the issue of whether an arbitration agreement is formed in the first instance must be determined by the court, even where there has been a failure to specifically challenge provisions within the agreement delegating certain decisions to an arbitrator." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1103 (10th Cir. 2020); *see also Rent-A-Center*, 561 U.S. at 70 n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'" (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006))).

Here, the Court finds that the arbitration agreements between Plaintiff and Wells Fargo evidenced the requisite intent to delegate the question of arbitrability to the arbitrator. *See* ECF Nos. 16-4 at 6, 16-10 at 37, 16-11 at 11 ("The arbitrator(s) will determine whether or not an issue is arbitrable[.]"). Plaintiff signed both the Wells Fargo Business Account Application and the Paycheck Protection Program Promissory Note and Agreement. Plaintiff argues in his Response brief that the arbitration agreements, as a whole, were unconscionable,[5] but he makes no specific challenge to their delegation

---

[5] Plaintiff contends, specifically, that the arbitration agreements were unconscionable because he "fac[ed] a crisis without any resources [and] was in a deeply inferior position to Defendant." ECF No. 19 at 3. He also alleges that he did not see the arbitration clauses before electronically signing the agreements, "being instead pressured to give his election signature if he was to receive the PPP he desperately needed to survive." ECF No. 11 at ¶ 6. This does not legally challenge the existence of an agreement between the parties. *See Smith v. Price's Creameries*, 650 P.2d 825, 829 (N.M. 1982) ("Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby."); *c.f. Fedor*, 976 F.3d at 1104 (plaintiff's claim that she never saw or signed the applicable policy was an issue of formation that could not be

provisions. *See generally* ECF No. 19. The Court must therefore enforce the delegation provisions and grant Defendant's Motion to Compel Arbitration.[6] *See Rent-A-Center*, 561 U.S. at 73.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss (ECF No. 15) is **GRANTED**. It is ORDERED that the parties **SHALL PROCEED** to arbitration, and that all proceedings in this Court are **STAYED** pending arbitration of Plaintiff's claims.

*[signature: Margaret Strickland]*

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

delegated to the arbitrator). Rather, as Plaintiff states in his brief, they present questions of unconscionability.

[6] Because the Court finds that the arbitration agreements must be enforced, it does not reach Defendant's alternative Motion to Dismiss. *See* ECF No. 15 at 14.